FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

2014 JUL 15  PM 3: 17

WILLIAM KIRKLAND

and                                    Case No.:  8:14 cv1715 T24 tew

STANLEY KIRKLAND,

     Plaintiffs,

v.

MOSAIC FERTILIZER, LLC;
ARNOLD LANIER, in his official capacity
as Sheriff of Hardeee County, Florida;
ANDREW McGUCKIN, as agent for
Mosaic Fertilizer, LLC and in his individual capacity;
JAMIE WRIGHT, in his individual capacity;
MICHAEL LAKE, in his individual capacity;
MATTHEW WHATLEY, in his individual capacity;
THOMAS ABBOTT, in his individual capacity;
DANIEL ARNOLD, in his individual capacity; and
MANUEL MARTINEZ, in his individual capacity

     Defendants.

_____/

## INTRODUCTION

1. This is an action brought for the unlawful deprivation of rights as

afforded to Plaintiffs, and all persons, pursuant to 42 U.S.C. Section 1983 to

redress the deprivation under color of law of Plaintiff's rights as secured by the

First, Fourth,  and Fourteenth Amendments to the Constitution of the United



States of America, and for various intentional torts and other claims pursuant to Florida law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331-1332.

3. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside and or engaged in or doing business in this judicial district, and the events giving rise to the claims asserted.

## PARTIES

4.  At all times material hereto, Plaintiffs, William Kirkland and Stanley Kirkland  were residents of  Hardee County, Florida, and were citizens of the United States of America.

5.  At all times material hereto, Defendant, Mosaic Fertilizer, LLC, (herein after "Mosaic" ) was a foreign, for-profit corporation doing business in the jurisdiction of this Court.

6.  At all times material hereto, Defendant, Lanier, was acting, in his official capacity as Sheriff of Hardee County, Florida;

7.  At all times material hereto, Defendant, McGuckin, was acting individually and in his capacity as an agent, employee of Defendant, Mosaic

and except as otherwise stated was acting under color of law.

8. At all times material hereto, Defendant, Abbott, was duly appointed and employed as a police officer of the city of Bowling Green, Hardee County, Florida and was acting under color of law.

9. At all times material hereto, Defendant, Wright, was duly appointed and employed as a deputy sheriff for Hardee County, Florida and was acting under color of law.

10. At all times material hereto, Defendant, Arnold, was duly appointed and employed as a police officer of the city of Bowling Green, Hardee County, Florida and was acting under color of law.

11. At all times material hereto, Defendant, Lake, was duly appointed and employed as a deputy sheriff for Hardee County, Florida and was acting under color of law.

12. 11. At all times material hereto, Defendant, Martinez, was duly appointed and employed as a deputy sheriff for Hardee County, Florida and was acting under color of law.

13. At all times material hereto, Defendant, Whatley, was duly appointed and employed as a police officer of the city of Wauchula, Hardee County, Florida and was acting under color of law.

## GENERAL FACTUAL ALLEGATIONS

14. Plaintiffs, William Kirkland and his son, Stanley Kirkland (ages 70 and 50, respectively) are residents of Hardee County, Florida.

15. During the late afternoon of Friday, July 16, 2014, Plaintiff, William Kirkland while driving down County Road 664 A in Hardee County, noticed that the Defendant Mosaic appeared to be engaging in activity in violation of a Temporary Restraining Order, which had been entered by this Court on July 1, 2010, against the Defendant Mosaic which in pertinent part stated:

> " Defendants, all of its agents, officers, employees and attorneys are temporarily restrained and enjoined from conducting any activities in reliance on the Corps permit SJA-1997-4099, including but not limited to any excavation , dredging, filling or other alteration of jurisdictional waters of the United States at the South Fort Meade Extension site." See attached Plaintiffs **Exhibit "A"**.

16. Seeing what appeared to be a violation of the subject court order, the Plaintiff, William Kirkland, stopped temporarily and exited his truck to get a better view from the side of the road after which he left returning to his homestead property which is located directly adjacent to the Defendant Mosaic  operating mine and where the Plaintiff has lived for many years.

17. The Plaintiff, William Kirkland, wanted but feared notifying the

county officials as such prior request had proved to fall on deft ears and feared retaliation from the Hardee County Sheriff and his deputies who he had learned had been hired as agents for Mosaic during their off duty hours. See Plaintiff's **Exhibit "B"**.

18.   As the evening drew near the Plaintiff, William Kirkland, realized that he had left a pair of his glasses along the side of the roadway where he had stopped earlier and decided that he would go and see if he could find his glasses and then return home.

19.   Having just had back surgery a week earlier and still in the recover stage with sutures all down his back and having celebrated his sixty six birthday the day before, the Plaintiff, William Kirkland was expecting that his son, Plaintiff, Stanley Kirkland  and his daughter in law might come to visit him at his home that evening.

20.   Instead, the senior Kirkland along with his son were about to experience  a July 16, 2010 night of unforgettable horror at the hands of the Defendant, Mosaic, its hired off duty deputy and agent Defendant, Andrew McGuckin and the other named and specified Defendants herein.

21.   The Defendant Sheriff, and his predecessor, together with Mosaic pursuant to written, express and implied acts and or omissions

created a De Facto special red line enforcement zone which included public streets roads and or highways surrounding the Mosaic mining operations and which at all times material herein anyone suspected of opposition to Mosaic's mining operations and traveling, stopping and attempting to document activities would be subjected to being unlawfully stopped, questioned, intimidated and as in the instant matter unlawfully arrested by Mosaic's off duty agent deputies.

22.  On July 16, 2014, the Plaintiffs William Kirkland and his son, Stanley Kirkland became the victims of the De Facto Mosaic policy carried out by the Defendant, Mosaic by and through its off duty agent, Defendant, Andrew McGuckin.

23.  It is important to note that at all times material herein, the Plaintiff, William Kirkland was one of many who dared speak out against the Defendant, Mosaic and its detrimental impact to the community.

24. On the early evening hours of July 16, 2010, while the Plaintiff William Kirkland was looking for his glasses were he had been earlier that afternoon, his son, Plaintiff, Stanley Kirkland and his daughter in law arrived and just as they found the senior Kirkland's glasses Mosaic's off duty deputy agent, Defendant, Andrew McGuckin, arrived in his Hardee

County Police Vehicle and armed and without provocation or explanation, stated that "Mosaic did not permit anyone in the area and they had to leave".

25. The Plaintiff, Stanley Kirkland, stated to the Defendant McGuckin, merely that his that they had just pulled of the public roadway for a moment and before Stanley could finish his sentence the Defendant McGuckin in a rude and hostile voice screamed, "Mosaic wants you out of here". Shocked the senior Kirkland drove away back towards his home followed by his son and daughter in law.

26. As the senior Kirkland was driving down the County Line road away from the Defendant, McGuckin the senior Kirkland needed to stop so as to talk with his son and daughter in law about their coming over as he had been suffering from his recent surgery.

27. The senior Kirkland stopped on the county line for a moment to speak with his son and daughter in law and parked off the roadway on the Polk County, Florida side of the street and his son and daughter in law traveling together pulled in behind the senior Plaintiff.

28. Before, they could engage each other in any meaningful conversation the Defendant, McGuckin, drove up and blurted out again in a loud and rude manner do you need anything, and the senior Kirkland stated

" You can kiss my ass", whereupon, the Defendant McGuckin, turned on his blue lights, got out of his police vehicle and demanded that the senior Kirkland produce his drivers license telling the senior Kirkland that he could not stop his truck not even for a moment despite the fact that the Plaintiffs had not violated any traffic law or had in any manner committed not so much as a civil infraction they were not permitted to stop even if just to have a conversation.

29.  When the senior Kirkland requested a simple explanation of what law they were violating if any, by pulling off the road now albeit in Polk County, Florida so as to have a short conversation, the Defendant, McGuckin, again without provocation or explanation immediately called over his police radio for Hardee County backup and not allowing the senior Plaintiff to have a conversation a conversation with his son and daughter in law.

30. The Defendant McGuckin, keep telling the senior Plaintiff to leave the area all the while refusing to return the senior Plaintiff's driver license at which point the senior Kirkland stated I can't drive and you know it without my drivers license leaving the senior at a stand still and his son and daughter in law there out of concern for their father.

31. The Plaintiff son, Stanley Kirkland kept telling the Defendant, McGuckin that his father had just had major back surgery just a week earlier and still had sutures all down his back to which the Deputy replied keep your mouth shut or leave now.

32. Soon additional on duty Hardee County deputies arrived, had to leave and when they Plaintiff senior Kirkland attempted to explain that he needed to speak with his son  stated that they needed to leave and could not roadway having been shaken up by the hostile manner and tone displayed by the Defendant McGuckin drove away down

33. At all times relevant to this Complaint, Defendant McGuckin acted to enforce the Defendant Mosaic's De Facto policy of intimidation against any person who holds opposition to Mosaic's mining operations and did so under color of law, to wit:

a. Defendant McGuckin, carried Hardee County Sheriff Department-issued equipment, including his weapon;

b. During the complained-of encounter, Defendant McGuckin, detained Plaintiffs pursuant to Mosaic's De Facto policy and utilized his authority as a Hardee County Deputy Sheriff for a dual purpose:

(1)First to enforce blind adherence to Mosaic's policy of

punishing anyone who poses opposition to its corporate mining

operations and

(2) Second underlying his actions was a total disregard for the

rights of the Plaintiffs and a willful and malicious undertaking

to disregard his sworn duty as a deputy sheriff to up hold and

enforce the law in accordance with the United states

Constitution


c. When other Defendant Police Officers and Deputies arrived,

Defendant McGuckin, directed the below actions based on a false and

misleading account of what had occurred prior to their arrival, none

of which had lawful jurisdictional authority in the subject Polk

County, Florida, nor had witnessed any criminal acts not even as

much as a civil infraction.

d.  None of the on duty officers attempted prior to the below listed

and above described events attempted to ascertain the true nature of

what in actual fact had occurred, to wit:

(1) As and for the only justification for the detainment of the

Plaintiffs should have been immediately ascertained by the on

duty officers when the Defendant McGuckin upon arrival asked

Defendant Bowling Green Police Officer, Ryan Abbott, to

produce his statute book with regard to " parking a vehicle off

the roadway", which under the circumstances would not even

support a civil traffic infraction;

(2) The senior Plaintiff, William Kirkland, was perhaps not
selective in his choice of words but it was Defendant
McGuckin's unbelievable actions of calling for several
additional on duty deputies and police officers which dispels
any justification and demonstrates that the Defendant
McGuckin's actions and omissions led to the constitutional
violations and injuries suffered by the Plaintiffs.

34. Upon arrival Defendants, Wright, Lake, Whatley, Abbott, and

Arnold, immediately learned that McGuckin had no probable cause as no

criminal or civil traffic violation had occurred and knew or should have

known Plaintiffs did not commit any criminal act, violation of the law, or

even a minor civil infraction.

35. Rather than de-escalate at most verbal exchange of what the

Defendant McGuckin got irate over McGuckin's immediate summoning of

the additional deputies and police created completely false persona and

appearance which a seasoned deputy such as McGuckin knew would

escalate an already agitated senior citizen, William Kirkland, which is

exactly what McGuckin intended by calling for selective backup rather than either just backing off for a sufficient amount of time and or at a bare minimum calling for the proper jurisdictional law enforcement which McGuckin knew to be Polk County Sheriff and deliberately chose to ignore because upon information and belief he had already been instructed to arrest William Kirkland by his principal and master of the moment, Mosaic, who wanted to prevent Kirkland from notifying the Court about Mosaic's violation of the Court's Injunction against it without regard for William Kirkland's constitutionally protected rights and those of his son's Stanley Kirkland.

36.   At all times material hereto, the acts, omissions, and other conduct of the Defendants, Wright, Lake, Whatley, Arnold, Abbot, and Martinez,  were committed within the course and scope of their employment as deputies and or police officers and taken under the color of law for their respective agencies in violation of the Plaintiffs, William and Stanley Kirkland's constitutionally protected rights.

37.   At all times at times material hereto, the acts, omissions, and other conduct of the Defendant, McGuckin except as otherwise stated were performed in the course and scope of his employment as an agent and

security guard for Mosaic.

38.  At all times material herein it was customary and lawful for the Plaintiffs and all other residents who lived in the area to be able to be present on public roadways/shoulders where McGuckin encountered the Plaintiffs.

39.  It became clear that the Defendants, Wright, Lake, Whatley, Arnold, Abbot, and Martinez were attempting to justify their outrageous conduct for what, upon information and belief, was a pre-text for harassing the Plaintiffs by obtaining a statement from the Mosaic employee.

40.  Defendants, McGuckin, Wright, Lake, Whatley, Abbott, Martinez and Arnold,  knew or should have known Plaintiffs did not commit any criminal act, violation of the law, or even a minor civil infraction.

41.  Plaintiffs were forced to incur bondsman's fees as a result of their baseless and unlawful detention.

42.  Prior to trial, all criminal charges against both Plaintiffs were dismissed by the State Attorney's Office due to the lack of credible evidence establishing any criminal offenses.

43.  Plaintiffs were forced to pay legal fees, costs, and related

expenses to defend themselves against the contrived and unsupported charges filed against them.

**COUNT I(42 U.S.C. § 1983) -Fourth Amendment—False Arrest and Excessive Force William Kirkland against Mosaic, Sheriff Lanier, and McGuckin**

44. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 43 of this Complaint as if set forth fully herein and further with respect to each Count contained in this Complaint that:

a. The misconduct described in all Counts contained in this Complaint were objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs constitutional rights.

b. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

c. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Mosaic and Hardee County Sheriff Department in that:

(I). As a matter of both policy and practice, the Hardee County Sheriff Department acting in concert with the Defendant Mosaic's De Facto policy, directly encourages, and is thereby a joint participant as the moving force

behind, the very type of misconduct at issue here by conspiring to ignore the law and failing jointly and individually to adequately train, supervise and control its deputies whether on or off duty, such that their joint and individual failures to do so manifests deliberate indifference;

(ii). As a matter of both policy and practice, the Defendant Mosaic's De Facto policy and the Sheriff's actions facilitate the very type of misconduct at issue here by failing to adequately punish and discipline such outrageous violations , thereby leading Hardee County on duty and off duty agents of Mosaic and the Sheriff's Department as well as other Police Officers to believe their actions with regard to the master architect Mosaic and its punitive corporate behavior will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting the Plaintiffs; specifically, Hardee County deputies accused of excessive force with regard to the Defendant Mosaic can be confident that the Office of Professional Standards will not investigate those accusations in earnest, and will refuse to recommend discipline even where the Deputies as in the instant matter have engaged in excessive force;

(iii). Mosaic's actions when combined with the Sheriff as enforcer under the totality of circumstances is an abuse of citizens rights and a flagrant

disregard for the law and if not properly addressed will lead to additional

unlawful episodes of police misconduct when acting for Mosaic.

45. On evening of July 16, 2010 , Defendant Mosaic by and through

its agent Defendant McGuckin, while acting within the course and scope of

his employment with Mosaic as an off duty security guard accosted the

plaintiff who at the time had lawfully pulled off the roadway in Polk

County, Florida, merely to speak with his son and daughter in law and had

committed no crime or broken any law.

46. Despite the fact that Kirkland had committed no criminal or civil

traffic violation McGuckin, nevertheless did the following:

    a.     Immediately and without provocation unlawfully detained the
Plaintiff,  took possession of the plaintiff's drivers license,
refusing to give it back so as to permit the plaintiff to proceed
to his home;

    b.    Intentionally purposely engaged the plaintiff in verbal
argument and immediately called for non-jurisdictional back up
assistance which brought to the scene six (6) additional law
enforcement officers; and

    c.    arrested, the plaintiff with no probable cause, handcuffed him
and had the plaintiff placed in a police vehicle and taken to jail
where the plaintiff was booked and charged with disorderly
conduct.

47. Said arrest was in violation of plaintiff's right to be free of an

unreasonable seizure and excessive force under the Fourth Amendment to

the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

48. Defendant thereafter caused plaintiff to be imprisoned without probable cause or reason therefore in the common jail of Hardee County Sheriff's Department for a period of some 4 hours, against plaintiffs will and without his consent, until released on bond, all in violation of his constitutional rights as described herein.

49. During the course of his arrest, plaintiff asked defendant McGuckin for the reason for defendant's actions, but made no threatening gestures or exhibited no assaultive behavior toward McGuckin.

50. In response, McGuckin assaulted the senior Kirkland by physically and violently grabbing his arms and jerking them behind his back which at all times material McGuckin was told and eye witnessed prior to such assault the actual back of the senior Kirkland and his sutures but in spite thereof did willfully, intentionally, and maliciously mishandle the plaintiff without cause or justification therefore.

51. Said use of excessive force deprived plaintiff of the constitutional right to bodily security and liberty under the Fourteenth Amendment to the United States Constitution, and was an unreasonable physical seizure of plaintiff under the Fourth Amendment to the United States Constitution.

52. As a result of the unwarranted use of excessive force, plaintiff was injured as follows: his back surgery was seriously aggravated

53. By reason of the above, plaintiff was greatly injured in his reputation and was exposed to public scandal and disgrace, suffered great mental anguish, was prevented from attending to his personal affairs for a long time, and was deprived of his constitutional rights as described herein all to his damage. Plaintiff suffered the following physical damages , suffered great mental anguish, and was deprived of his constitutional rights, all to his damage.

54. The acts taken by Mosaic's agent, off duty deputy McGuckin were within the scope of his private employment; taken in return for private compensation, contrary to a statute prohibiting private compensation for public duties; Mosaic ordered or directed the action; Mosaic gave consent to the action, which was taken by the McGuckin with a primary intent to benefit Mosaic.

55. The acts of McGuckin should be imputed to the Defendant Sheriff in that :

(1) the action taken by the McGuckin involved an exercise of a traditional police power, such as the power to arrest, the power to issue citations, or the power to command aid;

(2) the Sheriff had knowledge, either actual or constructive, of the action taken by McGuckin

(3) The action taken by McGuckin simultaneously serves the objectives of Mosaic and the Sheriff; and

(4) The objectives of Mosaic and the Sheriff, are both served by McGuckin's action, and  are not inconsistent with each other.

**WHEREFORE**, Plaintiff, William Kirkland, demands judgment against Mosaic, Sheriff Lanier, and McGuckin for compensatory and punitive damages, to include pain and suffering, mental anguish, costs, attorney fees, and for any further relief this Court deems just and proper.

### COUNT II
### (42 U.S.C. § 1983) -Fourth Amendment—False Arrest and Excessive Force Stanley Kirkland against  Mosaic, Sheriff Lanier, McGuckin, Wright, and Lake

56.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 55(4) of this Complaint as if set forth fully herein.

57.   On evening of July 16, 2010 , Defendant Mosaic by and through its agent Defendant McGuckin, while acting within the course and scope of his employment with Mosaic as an off duty security guard accosted the plaintiff, Stanley Kirkland,  who at the time had lawfully pulled off the roadway in Polk County, Florida, merely to speak with his father, William Kirkland and had committed no crime or broken any law.

58.   Despite the fact that Stanley Kirkland had committed no criminal or civil traffic violation McGuckin, undertook the actions described herein above and below:

   a.   Immediately and without provocation McGuckin unlawfully detained Stanley Kirkland's father William Kirkland,  took possession of his father's drivers license, and when asked by William Kirkland for its return ignored his father's request.

   b.   This action by McGuckin prevented Stanley's father from leaving which they had initially stopped just to converse about

how his father was feeling having just had surgery a week earlier.

c.    Both Stanley Kirkland and his wife Denise who was also present and witnessed the entire episode just wanted to make sure the senior Kirkland was alright and had just stopped to discuss Stanley and his wife's going to the senior Kirkland's home just a short distance down the road;

d.    While the Kirklands' where out of the vehicles attempting to talk McGuckin, immediately begin yelling as he had just moments earlier whereupon, Stanley Kirkland told McGuckin his Father had recent surgery and the senior Kirkland then raised up his shirt and showed McGuckin his back which clearly showed the senior still had sutures.

e.    At which point McGuckin  begin to purposefully agitate the senior Kirkland solely because the senior Kirkland told McGuckin, to "kiss his ass", after which, McGuckin, to begin yelling at both William and Stanley.

f.    The senior Kirkland stated that Mosaic was  violating a court order  by operating when an injunction had been put against Mosaic, whereupon,  McGuckin immediately called for non-jurisdictional back up assistance which brought to the scene six (6) additional law enforcement officers.

g.    After the arrival of the other deputies and police officers, McGuckin, insisted on showing the senior Kirkland a statute about parking off the roadway leaving unattended or abandoned vehicles.

h.    When McGuckin made the senior walk across the street from Polk County side of the roadway to the Hardee County side Stanley Kirkland shouted that if you just give my father his license we could go home.

I.    Hearing Stanley words McGuckin screamed to Defendant

deputy Wright arrest him, Stanley Kirkland and without warning Defendant Wright grabbed Stanley Kirkland from behind twisted his arms.

j.     Stanley attempted to call out to McGuckin as to why he was arresting his father when without warning Defendant Wright shot Stanley Kirkland in the back with a taser causing Stanley to fall face down onto the roadside.

k.     Stanley Kirkland's face struck a hard shell surface as he fell face down to the ground and while helpless on the ground Defendant Wright tased him again.

l.     Defendant Deputy Lake then grabbed Stanley arms, handcuffed him, and threw him in the back of placed in a police vehicle and taken to jail.
       The tasing caused Stanley to lose his mess his pants and when he pleaded and told Defendant Abbot that he had messed his pants and had a serious pre-existing medical issue called Chronic obstructive pulmonary disease or COPD and was experiencing severe chest pains and begged to be taken to the hospital, whereupon, Defendant Abbot replied "you stink up my car" and totally ignored Stanley Kirkland's plea for medical help. Stanley was booked and charged with disorderly conduct and resisting arrest without violence.

59. Said arrest was in violation of plaintiff's right to be free of an unreasonable seizure and excessive force under the Fourth Amendment to the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

60. Defendants thereafter caused plaintiff to be imprisoned without probable cause or reason therefore in the common jail of Hardee County Sheriff's Department for a period of some 4 hours, against plaintiffs will

and without his consent, until released on bond, all in violation of his constitutional rights as described herein.

During the course of his arrest, plaintiff asked defendant McGuckin for the reason for defendant's actions, but made no threatening gestures or exhibited no assaultive behavior toward McGuckin or any other law enforcement or other person.

61. In response, McGuckin, screamed demanding Defendant Wright arrest Stanley Kirkland merely because he was trying to get his father's license back and leave.

62. Said use of excessive force against Stanley Kirkland deprived him of the constitutional right to bodily security and liberty under the Fourteenth Amendment to the United States Constitution, and was an unreasonable physical seizure of plaintiff under the Fourth Amendment to the United States Constitution.

63. As a result of the unwarranted use of excessive force, plaintiff was injured and treated with a total and complete disregard for his health safety and welfare and suffers an aggravation of pre-existing health issues due to tasing and threw manner in which he was treated while in the custody and control of police officer Abbot and the others named herein.

64. By reason of the above, plaintiff was greatly injured in his reputation and was exposed to public scandal and disgrace, suffered great mental anguish, was prevented from attending to his work and personal affairs for a long time, and was deprived of his constitutional rights as described herein all to his damage.

65.  Plaintiff suffered the following physical damages , suffered great mental anguish, and was deprived of his constitutional rights, all to his damage.

66.  The acts taken by Mosaic's agent, off duty deputy McGuckin were within the scope of his private employment; taken in return for private compensation, contrary to a statute prohibiting private compensation for public duties; Mosaic ordered or directed the action; Mosaic gave consent to the action, which was taken by the McGuckin  with a primary intent to benefit Mosaic.

67.  The acts of McGuckin, Wright and Lake  should be imputed to the Defendant Sheriff in that :

(1) the action taken by the McGuckin, Wright and Lake  involved an exercise of a traditional police power, such as the power to arrest, the power to issue citations, or the power to command aid;

(2) the Sheriff had knowledge, either actual or constructive, of the action taken by McGuckin,  Wright and Lake

(3) The action taken by McGuckin,  Wright and Lake simultaneously serves the objectives of Mosaic and the Sheriff; and

(4) The objectives of Mosaic and the Sheriff, are both served by McGuckin,  Wright and Lake's  action, and  are not inconsistent with each other.

**WHEREFORE**, Plaintiff, Stanley Kirkland, demands judgment against Mosaic, Sheriff Lanier, and McGuckin,  Wright and Lake for compensatory and punitive damages, to include pain and suffering,

mental anguish, costs, attorney fees, and for any further relief this Court deems just and proper.

## COUNT III
**(42 U.S.C. § 1983 and 1985) First and Fourteenth Amendment Deprivation of Civil Rights under Color of Law -Conspiracy; Arrest; Equal Protection  Because of Association with Environmental Protection Groups and Free Speech Opposition and Plaintiff's Public and Private Interest In Asserting A Quasi Whistle-Blower Protection Against Mosaic Mining**

**William Kirkland against Mosaic, Sheriff Lanier, and McGuckin**

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 67(4) of this Complaint as if set forth fully herein.

68.  Plaintiff William Kirkland has been subjected, by the above recited acts, to the deprivation by defendants, under color of law and of the customs and usages of the State of Florida, of rights, privileges, and immunities secured to him by the Constitution and laws of the United States, particularly his rights of association and speech guaranteed under the First Amendment to the Constitution, his rights to security of person and freedom from arrest, except on probable cause, supported by oath or affirmation, guaranteed by the Fourth Amendment to the Constitution; his right to be informed of the true nature and cause of the accusation against him, guaranteed by the Sixth Amendment to the Constitution; his right not to be deprived of liberty without due process of law, guaranteed by the Fifth and Fourteenth Amendments to the Constitution; his rights reserved or retained under the Ninth and Tenth Amendments to the Constitution; and his right to the equal protection of the laws guaranteed under the Fourteenth Amendment to the Constitution.

69.  In doing the acts and things above complained of, defendants Mosaic Sheriff Lanier, and McGuckin were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive plaintiff of rights

guaranteed to her under the Constitution and laws of the United States, as

hereinabove enumerated.

**WHEREFORE**, Plaintiff, William Kirkland, demands judgment against

Mosaic, Sheriff Lanier, and McGuckin for compensatory and punitive

damages, to include pain and suffering, mental anguish, costs, attorney fees,

and for any further relief this Court deems just and proper.

### COUNT IV
**(42 U.S.C. § 1983 and 1985) First and Fourteenth Amendment
Deprivation of Civil Rights under Color of Law -Conspiracy; Arrest; and
Falsify Police Reports Because of Association with Environmental Protection
Groups and Free Speech Opposition and Quasi Whistle-Blower Protection
Against Mosaic Mining William Kirkland against  Mosaic,  Sheriff  Lanier,
and  McGuckin and Martinez**

70. Plaintiffs re-allege and incorporate by reference paragraphs 1 through

71. of this Complaint as if set forth fully herein.

72. Plaintiff William Kirkland has been subjected, by the above recited

acts, to the deprivation by defendants, under color of law and of the customs and

usages of the State of Florida, of rights, privileges, and immunities secured to him

by the Constitution and laws of the United States, particularly his rights of

association and speech guaranteed under the First Amendment to the Constitution,

his rights to security of person and freedom from arrest, except on probable cause,

supported by oath or affirmation, guaranteed by the Fourth Amendment to the

Constitution; his right to be informed of the true nature and cause of the

accusation against him, guaranteed by the Sixth Amendment to the Constitution;

his right not to be deprived of liberty without due process of law, guaranteed by

the Fifth and Fourteenth Amendments to the Constitution; his rights reserved or

retained under the Ninth and Tenth Amendments to the Constitution; and his right

to the equal protection of the laws guaranteed under the Fourteenth Amendment to

the Constitution.

73.  In doing the acts and things above complained of, defendants Mosaic,

Sheriff Lanier, and McGuckin were conspirators engaged in a scheme and

conspiracy designed and intended to deny and deprive plaintiff of rights

guaranteed to her under the Constitution and laws of the United States, as

hereinabove enumerated.

**WHEREFORE,** Plaintiff, William Kirkland, demands judgment

against Mosaic, Sheriff Lanier, and McGuckin for compensatory and

punitive damages, to include pain and suffering, mental anguish, costs,

attorney fees, and for any further relief this Court deems just and proper.

**COUNT V**
**(42 U.S.C. § 1983) - Eighth Amendment**
**Cruel and Unusual Punishment**
**William Kirkland against  McGuckin and Mosaic**

74.  Plaintiffs re-allege and incorporate by reference paragraphs 1

through  73 of this Complaint as if set forth fully herein.

75. The Plaintiff, William Kirkland claims that Defendant McGuckin was made aware of the senior Kirkland's medical condition at the outset and willfully and intentionally, maliciously and purposefully chose to ignore Kirkland's post surgical condition claims and that McGuckin caused Kirkland to suffer unjust pain and suffering and aggravation of his recent surgery by physically jerking Kirkland's arms behind his back despite full knowledge that Kirkland had sutures down his back and the manner in which he placed the disabled senior citizen in the back of the police vehicle and that the conduct of the Defendant McGuckin, was in violation of his constitutional rights in that: (a) Defendant McGuckin, showed a deliberate indifference to a serious medical needs of the senior Kirkland; (b) Defendant McGuckin was acting or purporting to act in the performance of his duties as an off duty agent and security guard for Mosaic and or in his official duties;

3. The senior Kirkland suffered great pain and mental anguish and continues to so suffer and that the same was a direct and proximate cause of the acts and or omissions of McGuckin and his deliberate indifference was a substantial factor in causing Kirkland's harm.

**WHEREFORE**, Plaintiff, William Kirkland, demands judgment against Defendant McGuckin for compensatory and punitive damages, to include pain and suffering, mental anguish, costs, attorney fees, and for any further relief this Court deems just and proper.

## JURY DEMAND

Plaintiffs, William Kirkland and Stanley Kirkland, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

AskALaw, LLC

James R. Tanner
Florida Bar No.: 0637246
4809 E. Busch Blvd.
Suite 204
Tampa, Florida 33617
Telephone (813) 322-3565
Lead Trial Counsel