## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WILLIAM KIRKLAND and STANLEY
KIRKLAND,

       Plaintiffs,

v.                                                                    Case No: 8:14-cv-1715-T-24TGW

MOSAIC FERTILIZER, LLC, ARNOLD
LANIER, ANDREW MCGUCKIN, JAMIE
WRIGHT, MICHAEL LAKE and
THOMAS ABBOTT,

       Defendants.

_____

## <u>ORDER</u>

     This cause comes before the Court on three motions: (1) Defendant Mosaic Fertilizer,

LLC's Motion to Dismiss (Dkt. 51), (2) Defendant Arnold Lanier's Motion to Dismiss (Dkt. 49),

and (3) Defendant Thomas Abbott's Amended Dispositive Motion to Dismiss Counts I & III of

the First Amended Complaint or, in the Alternative, Motion for Summary Judgment (Dkt. 65).

Plaintiffs oppose these motions. (Dkts. 58, 61, and 68).

## I.     BACKGROUND

     On July 15, 2014, Plaintiffs William and Stanley Kirkland filed a complaint against

Defendants Mosaic Fertilizer, LLC ("Mosaic"), Arnold Lanier, in his official capacity as Sheriff

of Hardee County, Florida, Andrew McGuckin, as agent for Mosaic and in his individual capacity,

and Jamie Wright, Michael Lake, and Thomas Abbott in their individual capacities. Plaintiffs filed

an amended complaint on December 30, 2014, which includes three counts brought pursuant to 42

U.S.C. § 1983: unlawful arrest as to both Plaintiffs against all Defendants (Count I), excessive

force as to Plaintiff William Kirkland ("W. Kirkland") against Mosaic, Lanier, and McGuckin

(Count II), and excessive force as to Plaintiff Stanley Kirkland ("S. Kirkland") against all Defendants (Count III).

The amended complaint alleges that W. Kirkland lives near a phosphate mine owned by Mosaic. In December 2006, Plaintiffs allege that Mosaic "entered into a contract" with the Hardee County Sheriff's Office ("HCSO") in which HCSO agreed to provide off-duty uniformed deputies to patrol Mosaic's property. (Dkt. 48, ¶ 11). Plaintiffs assert the primary focus of the contract was to "keep members of the public away" from the Mosaic mine. *Id*. Because of environmental concerns, W. Kirkland allegedly had been instrumental in a lawsuit brought by the Sierra Club against Mosaic, in which a temporary restraining order was entered enjoining Mosaic from excavating, dredging, filling or altering waters near its South Fort Meade Extension site. (*See* Dkt. 48-2). Plaintiffs allege that Mosaic wanted to keep the public from seeing Mosaic's violations of the temporary restraining order.

On July 16, 2010, Plaintiffs allege W. Kirkland stopped his car on the side of a public road in Hardee County where he could observe the Mosaic site and take photographs of what he believed to be activity in violation of the temporary restraining order. He left the location, but returned later in the evening, and was joined by S. Kirkland, in order to find glasses that he left on the side of the road. While Plaintiffs were at the roadside, Defendant McGuckin, an off-duty HCSO deputy, was patrolling Mosaic's boundaries to keep the public away, pursuant to Mosaic's and HCSO's instructions.[1] McGuckin approached Plaintiffs on the roadside and stated "Mosaic [does] not permit anyone in the area and [they] had to leave" and "Mosaic wants you out of here." (Dkt 48, ¶ 16). In response, Plaintiffs left the roadside and drove to a nearby location in Polk County,

---

[1] Plaintiffs assert that at all relevant times, McGuckin was acting as the agent of Mosaic and HCSO.

on County Line Road where they pulled onto the shoulder of the road and conversed with each other.

While Plaintiffs were at the County Line Road location, McGuckin approached Plaintiffs and inquired why W. Kirkland had stopped after being told to leave the area. W. Kirkland became visibly upset and McGuckin called for back-up. McGuckin requested W. Kirkland's driver's license, which W. Kirkland provided. McGuckin then asked Plaintiffs to leave. W. Kirkland responded that he could not leave without his driver's license. S. Kirkland advised McGuckin that W. Kirkland was in pain due to a recent back surgery. During Plaintiffs' and McGuckin's confrontation, Defendants Wright,[2] Abbott[3], and Lake[4] arrived at the scene. Thereafter, McGuckin arrested W. Kirkland, placing W. Kirkland's hands behind his back and handcuffing him. McGuckin's actions in handcuffing W. Kirkland allegedly caused W. Kirkland pain due to his recent surgery. While W. Kirkland was being arrested, S. Kirkland verbally demanded his father be released, after which, Wright placed S. Kirkland under arrest for obstructing a law enforcement officer from fulfilling his duties. Plaintiffs allege Abbott and Lake assisted with Plaintiffs' arrests. After S. Kirkland was placed under arrest, Wright deployed his taser on S. Kirkland two or three times, aggravating a lung disability and causing S. Kirkland to defecate. Plaintiffs were transported to jail, with S. Kirkland riding in Abbott's patrol car. Abbott allegedly drove S. Kirkland to a hospital, but returned to the jail without S. Kirkland receiving any treatment from the hospital. Plaintiffs were detained at the jail until they posted bond and were released.

---

[2] Wright was employed as a police officer for Wachula Police Department, Hardee County, Florida at all times material hereto.

[3] Abbott was employed as a police officer for of the city of Bowling Green, Hardee County, Florida at all times material hereto.

[4] Lake was employed as a deputy sheriff for Hardee County, Florida at all times material hereto.

Plaintiffs claim that Defendants' actions constituted unlawful arrests and excessive use of force, and that they are entitled to relief pursuant to 42 U.S.C. § 1983. Defendants Mosaic, Lanier, and Abbott now move to dismiss.[5]

## II.   DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In Counts I-III of the amended complaint, Plaintiffs allege that Defendants violated the Civil Rights Act of 1871, 42 U.S.C. § 1983. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to a deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. To state a cause of action under section 1983, a plaintiff must allege: "(1) that he was deprived of rights, privileges or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under

---

[5] Alternatively, Defendant Abbott has moved for summary judgment.

color of state law." *Ridley v. Stewart,* No. 3:07–cv–1173–J–16JRK, 2008 WL 876960, at *3 (M.D. Fla. March 27, 2008) (citing *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992)).

## III.    MOSAIC'S MOTION TO DISMISS

Mosaic argues that Plaintiffs cannot state a claim against it pursuant to § 1983 because Mosaic cannot be held vicariously liable for the actions of its alleged agent, McGuckin, and because it did not act under color of state law. Plaintiffs in response assert that Mosaic acted under color of state law because: (a) Mosaic is vicariously liable for the actions of McGuckin, who was acting as the agent of Mosaic at the time of the alleged unlawful arrest; and (b) Mosaic's relationship with HCSO reflects sufficient joint action with the state to sustain a § 1983 claim.

### A.    <u>Vicarious Liability Under § 1983</u>

Mosaic argues that it cannot be held vicariously liable for any alleged violations of Plaintiffs' civil rights by its agents because it is merely a private entity that engaged an off-duty police officer to provide security. In response, Plaintiffs argue the McGuckin was acting as an agent for Mosaic and acting at the direction of Mosaic to keep Plaintiffs away from Mosaic's property.

"A defendant cannot be held liable under section 1983 on a *respondeat superior* or vicarious liability basis." *Harvey,* 949 F.2d at 1130 (11th Cir.1992) (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). This rule applies to both municipal and private corporations. *Harvey,* 949 F.2d at 1130. "Therefore, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*." *Jones v. Eckloff,* No. 2:12-CV-375-FTM-29, 2014 WL 272666, at *6 (M.D. Fla. Jan. 23, 2014) (citations omitted).

However, a corporation may be held liable for the unconstitutional acts of employees where there is a policy, custom, or action by those who represent official policy which causes the injury. *Edwards v. Acadia Realty Trust, Inc.*, 141 F. Supp. 2d 1340, 1347-48 (M.D. Fla. 2001) *aff'd sub nom. Edwards v. Acadia Realty Trust*, 31 F. App'x 936 (11th Cir. 2002) (citations omitted). The plaintiff must demonstrate that the entity was the "moving force" behind the injury, demonstrating both culpability and causation through the entity's policies. *See Rey*, 1998 WL 656070, at *4 (citing *Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 117 S. Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)).

### B.    Nexus/Joint Action of Mosaic and HCSO

Mosaic argues Plaintiffs have not established a sufficient nexus to show that Mosaic acted jointly with McGuckin, thereby qualifying Mosaic as a state actor. Plaintiffs in response argue that Mosaic acted under color of state law because it acted jointly with McGuckin, who was working for Mosaic as a result of an agent agreement between Mosaic and HCSO.

Under the nexus/joint action test, a court must consider whether the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise. *See id*. at 1278 (citing *Rayburn ex rel. Rayburn v. Hogue,* 241 F.3d 1341, 1347 (11th Cir.2001) (alterations and internal quotation marks omitted)). To establish this type of action under 42 U.S.C. § 1983, "the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *Harvey*, 949 F.2d at 1133 (citing *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)). Merely conclusory allegations are insufficient to establish state action through joint action. *See Harvey*, 949 F.2d at 1133.

To establish that a private party is a state actor, "the governmental body and private party

must be intertwined in a symbiotic relationship [that] involve[s] the specific conduct of which the plaintiff complains." *Focus on the Family,* 344 F.3d at 1278 (internal quotation marks omitted); *see also Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1316 (11th Cir. 2000) ("to sustain a § 1983 claim under the nexus/joint action test, the symbiotic relationship between the public and private entities must involve the alleged constitutional violation.") Private parties are only rarely deemed to be state actors under § 1983. *Brivik v. Law*, 545 F. App'x 804, 808 (11th Cir. 2013). "[E]ach case must be analyzed on its own facts to determine whether the interdependence between the private and state entities reflects sufficient state involvement to sustain a § 1983 claim." *Patrick,* 201 F.3d at 1315.

### C. Mosaic's Motion to Dismiss

Plaintiffs allege in their First Amended Complaint that Mosaic and HCSO entered into a contract that provided Mosaic would directly pay HSCO for deputies to patrol the Mosaic property during off-duty hours, with the "primary focus to keep members of the public away from the Mosaic Hardee County phosphate mine." (Dkt 48., ¶ 11). The amended complaint also alleges that at all material times, McGuckin was acting pursuant to instructions from Mosaic and Sheriff Lanier, to "patrol the boundaries of Mosaic to keep the public away from seeing Mosaic violate the federal court order." *Id.* at ¶ 15. In support of their claims, Plaintiffs attach an "Agent Agreement," which they allege to be evidence of a contract between Mosaic and HCSO. The "Agent Agreement" states in relevant part:

> Mosaic Company, being fully aware of our legal and constitutional property rights, do individually and collectively appoint the Sheriff of Hardee County and his deputies as our agents for the following purposes: (1) To have free access to each of our properties in order to seek out and arrest those who may be trespassing thereon, or otherwise engaged in illegal activities; AND (2) To perform such duties on our property as they may be directed to do in their capacity as Deputy Sheriff.

(Dkt. 48-1).

Plaintiffs further allege McGuckin stated to Plaintiff W. Kirkland "Mosaic did not permit anyone in the area" and "Mosaic wants you out of here." (Dkt 48, ¶ 16). According to Plaintiffs' allegations, McGuckin's decision to order Plaintiffs to move from the roadside upon their initial encounter was "not pursuant to Florida law, but to the orders of Mosaic…." *Id.* at ¶ 20. Plaintiffs also allege they were transported to jail "to ensure the goal of Mosaic to keep the public away from its mining operations." (Dkt. 58, p. 3, 8).

### 1.      Count I: Unlawful Arrest with Respect to W. Kirkland

The Court finds that Plaintiffs' allegations are sufficient to preclude Mosaic's motion to dismiss as to W. Kirkland's unlawful arrest claim on the bases of vicarious liability and joint action.

With regard to vicarious liability, Plaintiffs allege Mosaic and HSCO agreed that HSCO would provide off-duty deputies to enforce Mosaic's plan to keep the public, and specifically, W. Kirkland away from Mosaic property. Plaintiffs allege that McGuckin's arrest of W. Kirkland was made in furtherance of Mosaic's plan and based on Mosaic and HSCO's instructions, rather than any violation of Florida law. These allegations establish a causal link between Mosaic's policy and its agent, McGuckin's arrest of W. Kirkland. Plaintiffs also allege W. Kirkland's arrest was unlawful due to lack of probable cause. Therefore, the Court concludes that Plaintiffs have adequately pleaded that W. Kirkland's unlawful arrest was caused by Mosaic's policy of keeping the public away from its property.

Plaintiffs' allegations also preclude dismissal of W. Kirkland's claim for unlawful arrest based on the nexus/joint action test. As discussed above, Plaintiffs allege Mosaic and HSCO were intertwined in a relationship in which Mosaic paid HSCO to provide off-duty deputies to carry out Mosaic's policy of keeping the public away from its property. Because Plaintiffs have also alleged

that the arrangement between Mosaic and HSCO resulted in McGuckin's arrest of W. Kirkland, Plaintiffs' claim for W. Kirkland's unlawful arrest is sufficient to survive Mosaic's motion to dismiss. Accordingly, Mosaic's motion to dismiss must denied as to Count I of the amended complaint, with respect to W. Kirkland's arrest.

### 2.    Count I: Unlawful Arrest with Respect to S. Kirkland

With regard to S. Kirkland's claim for unlawful arrest, Plaintiffs allege that Defendant Wright placed S. Kirkland under arrest and that Defendant Lake handcuffed S. Kirkland. Plaintiffs allege that Wright was employed as a police officer for Wachula Police Department at the time of the arrest. Plaintiffs do not allege that Wright was an employee or agent of Mosaic, thus Mosaic cannot be vicariously liable for Wright's actions on the basis of *respondeat superior*. *See Ramsey v. Gamber*, 469 F. App'x 737, 741 (11th Cir. 2012) (holding that a party relying on the doctrine of *respondeat superior* has the burden of proving the principal-agent relationship). Plaintiffs also fail to allege any relationship between the Wachula Police Department and Mosaic, therefore, Plaintiffs fail to state a claim against Mosaic on the basis of joint action with the state with regard to Wright. *See Focus on the Family,* 344 F.3d at 1278.

With regard to Defendant Lake, whom Plaintiffs allege was employed as a deputy sheriff for Hardee County, Plaintiffs merely allege that he assisted S. Kirkland's arrest and that he "knew or should have known that no arrest was authorized under the law." (Dkt. 48, ¶ 33). However, the amended complaint also contains factual allegations that S. Kirkland was demanding W. Kirkland's release at the time S. Kirkland was arrested for "obstructing a law enforcement officer from fulfilling his duties." (Dkt. 48, ¶ 23). Taken together, these allegations create ambiguity as to the motivation behind Lake's actions. Additionally, Plaintiffs have not alleged that Lake was acting pursuant to any instructions from Mosaic. As such, Plaintiffs have not alleged sufficient

facts to show that Mosaic's policy was the moving force behind Lake's actions. *See Rey*, 1998 WL 656070, at *4. Therefore, Plaintiffs have failed to state a cause of action against Mosaic for the unlawful arrest of S. Kirkland on the basis of Lake's actions. Accordingly, Mosaic's motion to dismiss must be granted as to Count I with regard to S. Kirkland's unlawful arrest claim.

### 3.    Counts II and III: Excessive Force

With regard to Plaintiffs' claims for excessive force, Plaintiffs have made no allegations that Mosaic had a policy that encouraged the use of excessive force by its agents. Similarly, Plaintiffs do not allege that the memorandum of understanding between Mosaic and the HCSO provided for the use of excessive force. The "Agent Agreement" Plaintiffs submit as evidence of an agreement between Mosaic and HCSO does not mention the use of excessive force and restricts the actions of agents to those that they "may be directed to do in their capacity as a Deputy Sheriff." (Dkt. 48-1). Because Plaintiffs have not established that Mosaic's policy involved or was moving force behind the use of excessive force by any Defendant, Plaintiffs' claims for excessive force in Counts II and III against Mosaic must be dismissed. *See e.g. Patrick*, 201 F.3d at 1316; *Edwards*, 31 F. App'x at 936.

## IV.    SHERIFF ARNOLD LANIER'S MOTION TO DISMISS

Lanier argues that Plaintiffs have failed to state a claim against him pursuant to § 1983 on the basis of *respondeat superior* or vicarious liability. Plaintiffs argue that the factual allegations contained in the amended complaint establish the existence of a plan or conspiracy between Mosaic, Lanier, and McGuckin, precluding dismissal. Plaintiffs also argue the lack of disciplinary action against the deputy Defendants evinces Lanier's policy, custom, or plan to keep the public away from Mosaic's property.[6]

---

[6] In their response, Plaintiffs concede that no punitive damages can be assessed against Lanier in his official capacity. *See* Dkt. 61, at 4. Accordingly, Plaintiffs' requests for punitive damages with respect to Lanier shall be stricken from

A.     <u>**Vicarious Liability Under § 1983**</u>

It is well established in the Eleventh Circuit that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); *see also Monell,* 436 U.S. at 691 & 694 n. 58. Instead, under § 1983, supervisory liability occurs only when the supervisor personally participates in the alleged misconduct or when there is a causal connection between the supervising official's actions and the alleged constitutional deprivation. *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003)), *vacated on other grounds,* 449 F.3d 1149 (11th Cir. 2006).

For liability purposes, "a suit against a public official in his official capacity is considered a suit against the local government entity he represents." *See Owens v. Fulton County,* 877 F.2d 947, 951 n. 5 (11th Cir.1989). A local government is, however, liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell,* 436 U.S. at 694 (holding that liability of municipalities and other governmental entities under § 1983 is limited to instances of official policy or custom). To attribute liability to a public official in his official capacity under § 1983, Plaintiffs must demonstrate that the public official had an official policy or custom that was "the moving force of the constitutional violation." *Vineyard v. County of Murray, Ga.,* 990 F.2d 1207, 1211 (11th Cir.1993) (quoting *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S. Ct. 445, 70 L.Ed.2d 509 (1981)).

---

the amended complaint.

B.    **Lanier's Motion to Dismiss**

The Court will consider Plaintiffs' claims against Lanier in his official capacity as claims against HCSO.[7] *See Owens,* 877 F.2d at 951 n. 5. Plaintiffs' allegations sufficiently plead that Mosaic paid HSCO to provide off-duty deputies to carry out Mosaic's plan or policy of keeping the public away from its property. Plaintiffs argue that Lanier is liable in his official capacity because he approved and instructed his deputies to carry out Mosaic's plan.

### 1.    Count I: Unlawful Arrest with Respect to W. Kirkland

As discussed above, Plaintiffs have sufficiently plead that Mosaic had a plan or policy to keep the public away from its property. Plaintiffs have also alleged that Mosaic agreed to pay HSCO to provide off-duty deputies to carry out its plan, and that McGuckin[8] was acting pursuant to Mosaic and Lanier's instructions to enforce the plan when he arrested W. Kirkland. Taking Plaintiffs' factual allegations as true, Lanier's instructions to McGuckin to keep the public away from Mosaic's property establishes a causal connection between Lanier's conduct and McGuckin's arrest of W. Kirkland. Therefore, the Court finds that Plaintiffs' allegations adequately state a cause of action against Lanier in his official capacity with respect to W. Kirkland's unlawful arrest claim.

### 2.    Count I: Unlawful Arrest with Respect to S. Kirkland

With regard to S. Kirkland's arrest, Plaintiffs' factual allegations do not establish that Lanier's policy was "the moving force" of the alleged constitutional violation by his agents. As an

---

[7] The Court notes that Plaintiffs seeks punitive damages against Lanier in his official capacity. However, in their response to Lanier's motion to dismiss, Plaintiffs assert that they are also pursuing claims against Lanier in his individual capacity. *See* Dkt. 61, at 4. However, the first amended complaint only asserts claims against Lanier in his official capacity. Therefore, the Court will disregard Plaintiffs' arguments against Lanier in his individual capacity. Should Plaintiffs wish to assert claims against Lanier in his individual capacity, they must move to amend the complaint and show cause as to why such amendment is warranted.

[8] Plaintiffs allege that McGuckin was acting as an "agent for the Sheriff of Hardee County under color of law in his capacity as a Deputy Sheriff for Hardee County." (Dkt. 48, ¶ 5).

initial matter, Plaintiffs' allege that S. Kirkland was placed under arrest by Defendant Wright. As discussed above, Wright is not alleged to be an agent or employee of Lanier or the HSCO; therefore, Plaintiffs have failed to state a claim against Lanier for vicarious liability based on the actions of Wright. *See Ramsey*, 469 F. App'x at 741. Additionally, Plaintiffs have not alleged that Lanier's policy or custom was the moving force behind Wright's arrest of S. Kirkland. Instead, Plaintiffs allege that Wright arrested S. Kirkland for "'rude behavior' and 'obstructing a law enforcement officer from fulfilling his duties,'" "[i]n response to [S. Kirkland's] demands to set his father free so they all could leave." (Dkt. 48, ¶ 23). Therefore, S. Kirkland's claim for unlawful arrest must be dismissed as to Lanier, with respect to the actions of Wright.

Plaintiffs also fail to state a claim against Lanier for unlawful arrest of S. Kirkland with respect to the actions of Defendant Abbott. Plaintiffs allege that Abbott "aided" and "assisted" Plaintiffs' unlawful detention and that S. Kirkland was placed in Abbott's patrol car after he was arrested. However, Plaintiffs fail to allege that Abbott was an agent or employee of Lanier.[9] Thus, for the same reasons discussed with respect to Wright, Plaintiffs have failed to state a claim against Lanier for unlawful arrest based on the actions of Abbott. *See Ramsey*, 469 F. App'x at 741.

Finally, to the extent Plaintiffs allege that Defendant Lake aided the purportedly unlawful detention and arrest of S. Kirkland, Plaintiffs fail to show that Lake's actions were motivated by Lanier's policy. With regard to Defendant Lake, Plaintiffs merely assert that Lake "aided" Plaintiffs' unlawful detention and handcuffed S. Kirkland after he was placed under arrest. (Dkt. 48, ¶¶ 21, 24). Unlike with McGuckin, whom Plaintiffs allege received instructions from Lanier to carry out the alleged policy, Plaintiffs make no factual allegations that support their conclusion

---

[9] Plaintiffs allege that "Defendant, Thomas Abbott, was…employed as a[] police officer of the city of Bowling Green…" rather than HSCO. (Dkt. 48, ¶ 7).

that Lake was acting pursuant to the same policy. Without such factual allegations, Plaintiffs have failed to state a claim against Lanier for S. Kirkland's unlawful arrest based on the actions of Lake. *See Iqbal*, 129 S. Ct. at 1950 (holding that legal conclusions must be supported by factual allegations in order to survive a motion to dismiss). Moreover, S. Kirkland's unlawful arrest claim fails on the basis of Lake's actions because Plaintiffs do not allege facts that show that Lanier's policy was the "moving force" behind Lake's actions. *See Vineyard,* 990 F.2d at 1211. Thus, Plaintiffs' claim for the unlawful arrest of S. Kirkland must be dismissed with respect to Lanier.

### 3.    Counts II and III: Excessive Force

As with Plaintiffs' claims of excessive force against Mosaic, Plaintiffs' excessive force claims must be dismissed as to Lanier because Plaintiffs have not alleged that Lanier or HSCO had a policy that encouraged the use of excessive force by its agents. As discussed above, in order to establish Lanier is vicariously liable under § 1983, Plaintiffs must demonstrate that Lanier had an official policy or custom that was "the moving force" behind Defendants' excessive force. Plaintiffs have made no allegations that Lanier encouraged, condoned, or directed the use of excessive force in any way. As such, Plaintiffs have failed to state a claim for vicarious liability of Lanier for excessive force.

Plaintiffs' response in opposition to Lanier's motion to dismiss also contains arguments regarding Lanier's ratification of the use of excessive force by HSCO deputies because the deputies were not disciplined. In order to establish Lanier's liability by ratification, Plaintiffs must show a "persistent failure to take disciplinary action against officers" who use excessive force, which "can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of *Monell.*" *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir.1985). Plaintiffs have made no allegations regarding a widespread practice of excessive force

by HSCO. Without such allegations, Plaintiffs cannot establish Lanier deliberately ignored an unconstitutional custom or policy; therefore, Plaintiffs have failed to state a claim on this basis. *See Griffin v. City of Opa–Locka,* 261 F.3d 1295, 1308 (11th Cir.2001) (discussing § 1983 liability for a municipality based on "governmental 'custom' "). Therefore, Counts II and III must be dismissed with respect to Lanier.

## V.   ABBOTT'S MOTION TO DISMISS

Plaintiffs assert claims against Abbott in Counts I and III. Abbott moves to dismiss Counts I and III because Plaintiffs have not alleged sufficient facts to state a claim for unlawful arrest or excessive force against Abbott and because qualified immunity bars Plaintiffs' claims against him. Abbott requests the Court consider his motion to dismiss as a motion for summary judgment under Fed. R. Civ. P. 56. He provides a sworn affidavit in support of his arguments.

To establish § 1983 liability, a plaintiff must show "proof of an affirmative causal connection" between a government actor's acts or omissions and the alleged constitutional violation, which "may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) (citing *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986)). Merely being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action. *Brown*, 608 F.3d at 737.

At all material times, Plaintiffs allege that Abbott was acting pursuant to his employment as a police officer of the city of Bowling Green. Plaintiffs allege that upon Abbott's arrival to the scene of Plaintiffs' arrests, Abbott "immediately learned…that McGuckin had no probable cause to detain or arrest anyone as no criminal or civil traffic violation had occurred." (Dkt. 48, ¶ 21).

Plaintiffs also allege that Abbott knew or should have known Plaintiffs had not violated any law, "particularly since Plaintiffs were located on the Polk County side of the road outside of their jurisdiction." *Id*. With regard to Abbott's actions, Plaintiffs assert Abbott "aided" and "assisted" the unlawful detention of Plaintiffs. (*Id.* at ¶¶ 21, 33).

Abbott argues Plaintiffs' claim for unlawful arrest as to W. Kirkland should be dismissed because Plaintiffs have not alleged facts showing that Abbott participated in W. Kirkland's arrest. The Court agrees.

Plaintiffs' allegations are not supported by any facts that show Abbott's personal involvement in W. Kirkland's arrest. It is well established that "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila*, 326 F.3d at 1185. Thus, Plaintiffs' conclusory allegations that Abbott "aided" or "assisted" W. Kirkland's arrest, without more, are insufficient to support a claim for unlawful arrest under § 1983. *See Brown*, 608 F.3d at 737. Therefore, Count I must be dismissed as to Abbott with respect to the arrest of W. Kirkland.

Because the Supreme Court has mandated that qualified immunity issues be resolved "at the earliest possible stage in litigation," *Hunter v. Bryant*, 112 S. Ct. 534, 536 (1991), the Court will treat Abbott's motion to dismiss as to Count I with respect to S. Kirkland's unlawful arrest and Count III as a motion for summary judgment, as these Counts implicate Abbott's argument that he is entitled to qualified immunity and require consideration of matters outside of the pleadings. Upon conversion of a motion to dismiss to a motion for summary judgment, notice must be given to each party that the status of the action is now changed, and they must be given a "reasonable opportunity" to present legal and factual material in support of or in opposition to the motion for summary judgment." *Bischoff v. Florida*, 242 F. Supp. 2d 1226, 1232 (M.D. Fla. 2003)

(citations and quotations omitted). Accordingly, pursuant to Fed. R. Civ. P. 56 (c), Plaintiffs shall have an opportunity to present legal and factual material in opposition to the motion for summary judgment as to Count I with respect to S. Kirkland's unlawful arrest and Count III.

## VI.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.      Defendant Mosaic Fertilizer, LLC's Motion to Dismiss (Dkt. 51) is **GRANTED** as to Count I with respect to the arrest of S. Kirkland, Count II, and Count III. The motion is **DENIED** as to Count I with respect to the arrest of W. Kirkland.

2.      Defendant Arnold Lanier's Motion to Dismiss (Dkt. 49) is **GRANTED** as to Count I with respect to the arrest of S. Kirkland, Count II, and Count III. The motion is **DENIED** as to Count I with respect to the arrest of W. Kirkland. Plaintiffs' request for punitive damages with respect to Defendant Lanier are hereby **STRICKEN**.

3.      Defendant Thomas Abbott's Amended Dispositive Motion to Dismiss Counts I & III of the First Amended Complaint or, in the Alternative, Motion for Summary Judgment (Dkt. 65) is **GRANTED** as to Count I with respect to the arrest of W. Kirkland. The Court will consider Abbott's motion as a motion for summary judgment with regard to Count I with respect to the arrest of S. Kirkland and Count III excessive force as to S. Kirkland; Plaintiffs shall have until May 13, 2015 to provide a response to include legal and factual material in opposition to Abbott's motion for summary judgment.

**DONE AND ORDERED** at Tampa, Florida, this 29th day of April, 2015.

SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record and Parties