**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

WILLIAM KIRKLAND and STANLEY
KIRKLAND,

    Plaintiffs,

v.                                                           Case No: 8:14-cv-1715-T-24TGW

MOSAIC FERTILIZER, LLC, ARNOLD
LANIER, ANDREW MCGUCKIN, JAMIE
WRIGHT, MICHAEL LAKE and
THOMAS ABBOTT,

    Defendants.

_____

**ORDER**

This cause comes before the Court on Defendant Thomas Abbott's Amended Dispositive Motion to Dismiss Counts I & III of the First Amended Complaint or, in the Alternative, Motion for Summary Judgment (Dkt. 65) and Plaintiffs' Response in Opposition (Dkt. 68).

**I.    BACKGROUND**

In this 42 U.S.C. § 1983 case, Plaintiffs William Kirkland and Stanley Kirkland seek relief for their allegedly unlawful arrests on July 16, 2010, and Defendants' use of excessive force during the arrests. The instant motion asks the Court to dismiss or grant summary judgment as to Plaintiff Stanley Kirkland's ("S. Kirkland") claims against Defendant Thomas Abbott for unlawful arrest and excessive force.[1]

---

[1] A detailed discussion of the factual allegations contained in the First Amended Complaint is included in this Court's April 29, 2015 Order (Dkt. 71) (the "April 29, 2015 Order"). The April 29, 2015 Order dismissed Count I of the Amended Complaint as to Defendant Abbott with respect to the arrest of William Kirkland ("W. Kirkland") and converted Abbott's motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

On July 16, 2010, Defendant Abbott was employed as a police officer for of the city of Bowling Green, Florida.[2] In the evening hours of July 16, 2010, Abbott responded to a back-up call made by Defendant Andrew McGuckin of the Hardee County Sheriff's Office. Abbott arrived at the scene in the area of E. County Line Road and County Road 664 after McGuckin had initially encountered Plaintiffs. McGuckin and W. Kirkland were engaged in a verbal argument. McGuckin asked Plaintiffs to leave the area. W. Kirkland responded that he could not leave without his driver's license, which he had given to McGuckin. W. Kirkland made several demands to be read the statute that McGuckin suspected W. Kirkland had violated. Abbott retrieved a statute book from his patrol car, however the argument between W. Kirkland and McGuckin continued. Thereafter, McGuckin arrested W. Kirkland, placing W. Kirkland's hands behind his back and handcuffing him.

McGuckin's actions in handcuffing W. Kirkland allegedly caused W. Kirkland pain due to a recent back surgery. While W. Kirkland was being arrested, S. Kirkland approached McGuckin and verbally demanded his father be released. Defendant Jamie Wright, a Wachula Police Officer, then placed S. Kirkland under arrest for obstructing a law enforcement officer. During S. Kirkland's arrest, Wright deployed a Taser device on S. Kirkland several times, aggravating a lung disability and causing S. Kirkland to defecate. Plaintiffs allege Abbott assisted with S. Kirkland's arrest, including "jump[ing]" on S. Kirkland during the course of his arrest, (Dkt. 79, p. 15), and transporting S. Kirkland to jail. Plaintiffs also allege Abbott drove S. Kirkland to a hospital, but returned to the jail without S. Kirkland receiving any treatment. Both Plaintiffs were detained at the Hardee County jail until they posted bond and were released.

---

[2] The First Amended Complaint alleges "[a]t all times material hereto, Defendant Thomas Abbott, was…employed as a police officer of the city of Bowling Green, Hardee County, Florida, and was acting pursuant to his employment under color of law." (Dkt. 48, ¶ 7).

2

Abbott now moves for summary judgment, arguing that he is entitled to qualified immunity.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir.2006) (citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (citation omitted).

## III.    DISCUSSION

### A.    **Qualified Immunity**

Abbott argues he is entitled to qualified immunity as to S. Kirkland's § 1983 unlawful arrest (Count I) and excessive force (Count III) claims. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami,* 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir.2002)). In order to be entitled to qualified immunity, a government official must demonstrate that the acts complained of were committed within the scope of the officer's discretionary authority. *Id*. at 1232. Once the officer has done so, "the burden shifts

3

to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002); *see also McClish v. Nugent,* 483 F.3d 1231, 1237 (11th Cir. 2007); *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997) ("[O]nce an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). The Eleventh Circuit has derived a two-part test for application of this analysis:

> 1. The defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'
>
> 2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional law.'

*Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir.1988) (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983) (per curiam)). This objective-reasonableness test provides qualified immunity protection to "all but the plainly incompetent or those who knowingly violate the law." *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997).

In order to prevent dismissal of his claims under the doctrine of qualified immunity, a plaintiff must show that the facts, taken in the light most favorable to the plaintiff, demonstrate the defendant violated a statutory or constitutional right. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001); *Sharp v. Fisher,* 532 F.3d 1180, 1183 (11th Cir. 2008); *McClish,* 483 F.3d at 1237. Then, even if the facts demonstrate a violation, the plaintiff still has the burden to show that the statutory or constitutional right was "clearly established" at the time of the violation in order to survive summary judgment. *See Saucier,* 533 U.S. at 201; *Sharp,* 532 F.3d at 1183; *McClish,* 483 F.3d at 1237. For the law to be "clearly established," it must be so clear that every objectively reasonable official understands it to prohibit the challenged act. *See*

*Vinyard,* 311 F.3d at 1353. The purpose of this requirement is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier,* 533 U.S. at 206.

In the instant case, it is undisputed that Abbott was a government official acting within the scope of his discretionary authority at the time of the conduct at issue. Therefore, the burden shifts to Plaintiffs to demonstrate that Abbott violated a clearly established statutory or constitutional right to overcome the qualified-immunity defense.

### B.    The Alleged Constitutional Violations

The parties dispute whether Abbott actually participated in S. Kirkland's arrest, used excessive force, or failed to intervene. However, for the purposes of this motion, the Court will treat Abbott as having participated in S. Kirkland's arrest as alleged by Plaintiffs. Considering the record in this light eliminates all issues of fact and allows the court to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute. *See Saucier,* 533 U.S. at 201.

#### 1.  Count I: False Arrest with Respect to S. Kirkland

Plaintiffs claim Abbott is liable under § 1983 for the unlawful arrest of S. Kirkland. The Fourth Amendment[3] provides for the right to be free from unreasonable searches and seizures. "An arrest is quintessentially a seizure of a person, and therefore subject to the Fourth Amendment's reasonableness requirement." *McClish,* 483 F.3d at 1238. When a police officer makes an arrest, the officer must have probable cause to believe that the arrestee has committed, is committing, or is about to commit a crime. *See Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir. 2003). If the officer lacks probable cause, the arrest violates the Fourth Amendment, *id.,* and "the arrestee has a claim

---

[3] The Fourth Amendment applies to the states via the Fourteenth Amendment. *United States v. Davis,* 313 F.3d 1300, 1302 (11th Cir. 2002).

under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Ortega v. Christian,* 85 F.3d 1521, 1526 (11th Cir. 1996). But the existence of probable cause is an absolute bar to such claims. *Marx v. Gumbinner,* 905 F.2d 1503, 1505-06 (11th Cir.1990).

"For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances." *Lee,* 284 F.3d at 1195. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Skop v. City of Atlanta, GA.,* 485 F.3d 1130, 1137 (11th Cir. 2007) (quotation omitted). However, when a court is determining whether an officer is entitled to qualified immunity, the Eleventh Circuit has held that arguable probable cause, not the higher standard of actual probable cause, should govern. *See McClish,* 483 F.3d at 1238, n.3 (citations omitted). Because only arguable probable cause is required, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Montoute,* 114 F.3d at 184.

Abbott argues that he did not participate in S. Kirkland's arrest, but even if he had, arguable probable cause existed to arrest S. Kirkland based on S. Kirkland's failure to obey McGuckin's commands to leave the area. The Supreme Court has held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557, 149 L. Ed. 2d 549 (2001). Indeed, "[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *United States v. Saunders*, 476 F.2d 5, 7

6

(5th Cir. 1973) (holding that arrest was valid based on marijuana possession even though agents making arrest relied only on charges of harboring and concealing a fugitive, for which there was no probable cause) (citations omitted).[4] Therefore, the relevant inquiry is whether Abbott reasonably believed probable cause existed to arrest S. Kirkland for any crime, based upon the information he possessed at the time of the incident. *See e.g. Atwater,* 532 U.S. at 354; *St. George v. Pinellas Cnty.,* 285 F.3d 1334, 1337 (11th Cir.2002) (internal citations omitted)); *Montoute*, 114 F.3d at 184.

Abbott argues that upon arriving at the scene, he witnessed McGuckin instruct Plaintiffs to leave several times and Plaintiffs refused to do so. Plaintiffs do not dispute that McGuckin instructed them to leave and they did not comply. Abbott contends that S. Kirkland's failure to comply with McGuckin's orders created arguable probable cause that S. Kirkland violated Florida Statute § 316.072 (3). Florida Statute § 316.072 (3) states, in relevant part,

> [i]t is unlawful … for any person willfully to fail or refuse to comply with any lawful order or direction of any law enforcement officer….

Fla. Stat. § 316.072 (3).

Whether an arresting officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern. *See Skop,* 485 F.3d at 1137 (citing *Crosby v. Monroe County,* 394 F.3d 1328, 1333 (11th Cir. 2004). Here, the undisputed facts clearly demonstrate that (1) Abbott arrived at the scene after McGuckin encountered and began conversing with Plaintiffs, (2) Abbott witnessed McGuckin order Plaintiffs to leave the area, and (3) both Plaintiffs refused to comply with McGuckin's order. The facts clearly show that Plaintiffs willfully to failed or refused to comply with McGuckin's orders. Plaintiffs have not alleged any facts

---

[4] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

7

showing that McGuckin's orders to leave the area were unlawful as to S. Kirkland. Because the undisputed facts establish each element for S. Kirkland's violation of Fla. Stat. § 316.072 (3), the Court concludes that Abbott had arguable probable cause to arrest S. Kirkland for violation of Fla. Stat. § 316.072 (3). Therefore, Plaintiffs have not satisfied their burden of showing that Abbott violated S. Kirkland's clearly established statutory or constitutional rights and Abbott is entitled to qualified immunity with regard to S. Kirkland's claims for unlawful arrest. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 122 S.Ct. 1536, 1557 (2001); *Lee v. Ferraro,* 284 F.3d 1188, 1195 (11th Cir.2002).

### B.  Count III: Excessive Force with Respect to S. Kirkland

Plaintiffs claim Abbott is liable under § 1983 for the use of excessive force in S. Kirkland's arrest. Determining whether the force used is reasonable under the Fourth Amendment requires a careful balancing of the "nature of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interest at stake." *Jackson v. Sauls,* 206 F.3d 1156, 1170-71 (11th Cir. 2000). The application of this test requires:

> careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989). In turn, "[u]se of force, must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight.'" *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 396). Further, evaluating the reasonableness of the force used requires allowing for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97.

8

Plaintiffs argue that Abbott violated S. Kirkland's constitutional right to be free from the use of excessive force when Abbott "jump[ed] on" S. Kirkland and when Abbott failed to intervene in another officer's deployment of a Taser device on S. Kirkland during the course of his arrest. (Dkt. 79, p. 15). In the context of excessive force claims, the Eleventh Circuit has previously noted that "generally no bright line exists for identifying when force is excessive." *Priester v. City of Riviera Beach,* 208 F.3d 919, 926 (11th Cir. 2000). Therefore, "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Id.* A narrow exception exists to the rule requiring particularized case law to establish clearly the law in excessive force cases: "when an excessive force plaintiff shows 'that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw,' the official is not entitled to the defense of qualified immunity." *Id.* (citing *Smith v. Mattox,* 127 F. 3d 1416, 1419 (11th Cir. 1997). The Eleventh Circuit has explained:

> [t]o come within the narrow exception, a plaintiff must show that the official's conduct 'was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point.' This test entails determining whether 'application of the [excessive force] standard would inevitably lead every reasonable officer in [the Defendants'] position to conclude the force was unlawful.'

*Id.* (citations omitted). Plaintiff bears the burden of establishing that the official's conduct was clearly excessive and that the law governing the circumstances was clearly established at the time of the violation. *See Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (citing *Pearson,* 129 S. Ct. at 815-16).

Plaintiffs argue that Abbott's actions in jumping on S. Kirkland and Abbott's failure to intervene when another officer deployed a Taser device on S. Kirkland were constitutional violations that were clearly established at the time of the incident; however, Plaintiffs fail to present

9

factually similar cases that support this argument. Instead, Plaintiffs only point the Court to cases that they assert establish Plaintiffs' right to resist unlawful arrest and one case of excessive force with substantially different facts. With regard to the former cases, the issue of whether S. Kirkland had a right to resist an unlawful arrest is immaterial to the instant analysis. Further, these cases do not satisfy Plaintiffs' burden of establishing that the law governing the circumstances of Abbott's actions was clearly established at the time of the alleged excessive force violation. *See Youmans*, 626 F.3d at 562. The case Plaintiffs allege is factually similar, *Priester v. City of Riviera Beach,* 208 F.3d 919 (11th Cir. 2000), is very different from the instant case.

In *Priester*, the court found that an officer who allegedly ordered a police dog to attack the plaintiff during an arrest and an officer who was present, but did not intervene to stop the attack, were not entitled to judgment as a matter of law based on qualified immunity. Accepting the plaintiff's factual allegations as true, the *Priester* court found that the arresting officer's actions in ordering and allowing his dog to attack and bite the plaintiff, threatening to kill the plaintiff for kicking his dog, and allowing the dog to attack for at least two minutes clearly violated the plaintiff's constitutional right to be free from the excessive use of force even in the absence of particularized case law. *See Priester*, 208 F.3d at 927. The court also found that the duty to intervene was clearly established for the officer who witnessed the use of excessive force and that he had the ability to intervene at the time of the alleged violation. *See id.* Given the outrageous facts, the court found that "[n]o particularized case law was necessary for a reasonable police officer to know that, on the facts of th[e] case…he should have intervened." *Id.* Thus, the second officer was also not entitled to qualified immunity. *See id.*

The facts of the instant case are substantially different and substantially less egregious than the facts in *Priester*. Here, the alleged excessive force violations stem from Abbott's "jump[ing]"

or "pil[ing]" on S. Kirkland during his arrest, and Abbott's failure to intervene when another officer deployed a Taser device on S. Kirkland during the arrest. The facts of this case are not so outrageous that they demonstrate the use of excessive force in the absence of particularized case law. Nor have Plaintiffs presented a controlling and materially similar case that clearly establishes Abbott's conduct was unconstitutional.

In order for the narrow exception to apply to qualified immunity, and for qualified immunity to be inappropriate, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Priester*, 208 F.3d at 927 (citing *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1150 (11th Cir.1994) (en banc))(internal quotations omitted). In other words, the facts and circumstances would lead *every* reasonable officer in Abbott's position to conclude the force used was unlawful based on the circumstances of this case. *See id.* (citations omitted).

In summary, with regard to Plaintiffs' allegations that Abbott "jumped" or "piled" on S. Kirkland during the course of his arrest, the Court finds that Abbott is entitled to qualified immunity. Abbott's actions in jumping or piling on S. Kirkland during the course of his arrest were not so far beyond the border between excessive and acceptable force to cause Abbott to know he was violating clearly established statutory or constitutional law.

Likewise, with regard to Plaintiffs' argument that Abbott had a duty to intervene in the Tasering of S. Kirkland by another officer, Plaintiffs have not shown either that the use of the Taser device was so far beyond the border between excessive and acceptable force that Abbott had to know the force used was excessive and he had to intervene or that the law was clearly established. Therefore, on the basis of the facts presented by Plaintiffs, it cannot be said that every

like-situated, reasonable government agent would conclude that deploying a Taser device constituted an excessive force violation that triggered a duty to intervene. *See Lassiter,* 28 F.3d at 1150. Accordingly, because Plaintiffs have not met their burden of showing that the constitutional rights were "clearly established" at the time of the violation and the facts of the case do not show that Abbott's actions were clearly excessive even in absence of case law, Abbott is entitled to qualified immunity as to S. Kirkland's excessive force claims.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Thomas Abbott's Amended Dispositive Motion to Dismiss Counts I & III of the First Amended Complaint or, in the Alternative, Motion for Summary Judgment (Dkt. 65) is **GRANTED**.

**DONE AND ORDERED** at Tampa, Florida, this 1st day of July, 2015.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record and Parties