UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM KIRKLAND and STANLEY
KIRKLAND,

    Plaintiffs,

v.                                              Case No: 8:14-cv-1715-T-24TGW

MOSAIC FERTILIZER, LLC, ARNOLD
LANIER, ANDREW MCGUCKIN, JAMIE
WRIGHT and MICHAEL LAKE,

    Defendants.

## ORDER

This cause comes before the Court on Defendant Mosaic Fertilizer, LLC's Motion for Final Summary Judgment (Dkt. 100), Defendant Sheriff's Motion for Summary Judgment (Dkt. 101), Defendants Lake and Wright's Motion for Summary Judgment (Dkt. 102), Plaintiffs' Response to Defendant Mosaic's Motion for Summary Judgment (Dkt. 103), and Plaintiff's Response to Motion for Summary Judgment Filed by Defendant, Lanier (Dkt. 104).

### I.     BACKGROUND

In this 42 U.S.C. § 1983 case, Plaintiff William Kirkland ("W. Kirkland") seeks relief for his allegedly unlawful arrest on July 16, 2010.[1]

W. Kirkland lives near a phosphate mine owned by Mosaic. On January 16, 2006, James R. Anderson ("Anderson"), an employee of Mosaic, sent the Hardee County Sheriff's Office

---

[1] The First Amended Complaint (the "Complaint") included claims for unlawful arrest as to W. Kirkland and Stanley Kirkland (Count I), excessive force as to W. Kirkland (Count II), and excessive force as to Stanley Kirkland (Count III). On April 29, 2015, this Court granted Mosaic and Defendant Sheriff Arnold Lanier's ("Sheriff Lanier") motion to dismiss as to Count I with respect to Stanley Kirkland, Count II, and Count III. Thus, the only remaining cause of action against Mosaic and Sheriff Lanier is W. Kirkland's unlawful arrest claim under Count I. Accordingly, this Order will address the facts and arguments relevant to W. Kirkland's unlawful arrest claim.

("HCSO") a letter that was intended to "serve as an 'Agent Agreement'" between HCSO and Mosaic Phosphates Co. (Dkt. 103-2) (the "Agent Agreement"). The Agent Agreement appointed the Sheriff of HSCO and his deputies as its agents for the following purposes: "(1) [t]o have free access to each of our properties in order to seek out and arrest those who may be trespassing thereon, or otherwise engaged in illegal activities; AND, (2) [t]o perform such duties on our property as they may be directed to do in their capacity as a Deputy Sheriff." *Id.* The Agent Agreement did not instruct HSCO deputies to keep people away from Mosaic's properties or prevent people from parking on the side of the road, so long as they were not trespassing on Mosaic's property. (Dkt. 100-2 at 13).

On July 1, 2010, in connection with a lawsuit brought by the Sierra Club against Mosaic, a temporary restraining order was entered enjoining Mosaic from excavating, dredging, filling or altering waters near its South Fort Meade Extension site. (Dkt. 103-3) (the "TRO").[2] The South Fork Meade Extension site ("SMF") is located near W. Kirkland's home. On July 9, 2010, Miles "Hamp" Plowden ("Plowden")[3] emailed several Mosaic employees regarding the TRO and "enhanced patrol" of SMF. (Dkt. 103-7) (the "July 9 Email"). The July 9 Email provided in part:

> We are not in violation of the injunction. Under the circumstances Tom [Myers, Mosaic's Vice President of Mining] is requesting enhanced patrol of the SFM expansion and general mine area, paying special attention to the area for suspicious activity, trespassers, persons who may be tampering with equipment or attempting to gain access to the property for the purpose of interfering with or photographing our authorized and permitted activities in the area.

*Id*. The July 9 Email reminded security personnel for Securitas, a private security firm hired by Mosaic, "not to speculate on or discuss the injunction with anyone they might encounter and to

---

[2] W. Kirkland provided the Sierra Club with information and photos in connection with the lawsuit.

[3] Plowden was Mosaic's designated corporate representative in this case. Plowden acted as security personnel for Mosaic.

continue their consistent, professional application of our pro-arrest stance against trespassing and other threshold crimes." *Id.* According to Anderson, Mosaic had a "skeleton crew" at the SMF property because Mosaic was "in shutdown mode" at that location. (Dkt. 100-2 at 10, 22). As a result, SMF was more vulnerable because of an ongoing problem Mosaic had with theft at its properties. *Id.*

On July 16, 2010, W. Kirkland stopped his car on the side of a public road in Hardee County where he could observe SMF and take photographs of what he believed to be activity in violation of the TRO. He left the location, but returned later in the evening, and was joined by his son, Stanley Kirkland ("S. Kirkland," together with W. Kirkland, the "Kirklands") in order to find glasses that he left on the side of the road. While the Kirklands were at the roadside, Defendant McGuckin, an off-duty HCSO deputy, who was patrolling Mosaic's boundaries for Mosaic, approached Plaintiffs on the roadside and asked the Kirklands if they were okay. (Dkt. 103-5, W. Kirkland Dep., 75:15-17). Shortly thereafter, the Kirklands left the roadside and drove to a nearby location on County Line Road in Polk County where they pulled onto the shoulder of the road, exited their vehicles and conversed with each other.

While the Kirklands were at the County Line Road location, McGuckin again approached the Kirklands and asked the Kirklands what they were doing there and if they were all right. *Id*. at 82:8-9. W. Kirkland responded by saying something along the lines of 'We're okay, but what is your problem?" *Id.* at 82:25-83:1. Shortly thereafter, McGuckin told the Kirklands that they needed to leave because Mosaic did not want them there. *Id.* at 83:7-8. W. Kirkland replied "Well, you could kiss my A double S."[4] *Id.* at 83:9-12. McGuckin turned on his lights, exited his vehicle and told W. Kirkland "I took that as a threat." *Id*. at 85:4-6. W. Kirkland responded "No, its an

---

[4] W. Kirkland specified that he did not spell the final word contained in his response.

invitation." *Id.* at 85:20. McGuckin requested W. Kirkland's driver's license, which W. Kirkland provided. McGuckin also called for back-up, causing several other deputies, including Defendants Wright[5] and Lake[6] to come to the scene. McGuckin then told the Kirklands they needed to leave. W. Kirkland responded, "I'm not leaving until I get my driver's license and get through talking to my son." *Id.* at 88:19-20. The Kirklands and the deputies remained at the scene for approximately one hour, during which time the Kirklands spoke with several deputies and disclosed that they each had a gun in their vehicles. *Id.* at 90:19-92:11. Approximately an hour after the Kirklands stopped at the scene, McGuckin asked W. Kirkland to cross the street to review a statute book. McGuckin read a portion of the statute book and W. Kirkland responded by calling McGuckin something, that "could have been very nasty". *Id.* at 96:20-21. McGuckin then arrested W. Kirkland.

W. Kirkland claims that McGuckin's actions constituted unlawful arrest. W. Kirkland also claims he is entitled to relief from Mosaic and Sheriff Lanier pursuant to 42 U.S.C. § 1983, because McGuckin was acting as an agent of Mosaic and HSCO. Mosaic and Sheriff Lanier now move for summary judgment.[7]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray,* 461 F.3d 1315,

---

[5] Wright was employed as a deputy sheriff for Hardee County, Florida at all times material hereto.
[6] Lake was employed as a deputy sheriff for Hardee County, Florida at all times material hereto.
[7] Wright and Lake also filed a motion for summary judgment. (Dkt. 102). However, W. Kirkland has represented that he does not assert claims against Wright and Lake. (Dkt. 113). Therefore, Wright and Lake's motion for summary judgment is moot.

4

1320 (11th Cir. 2006) (citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (citation omitted).

### III. MOSAIC'S MOTION FOR SUMMARY JUDGMENT

Mosaic argues that it is entitled to summary judgment because W. Kirkland cannot show that Mosaic is vicariously liable for McGuckin's actions. Specifically, Mosaic argues that W. Kirkland has not shown that Mosaic has any unconstitutional official policy or custom. Additionally, Mosaic argues that W. Kirkland has failed to show that McGuckin was a Mosaic official with final policy making authority. Furthermore, Mosaic argues that because W. Kirkland cannot establish vicarious liability, W. Kirkland cannot show state action pursuant to the nexus/joint action test.

W. Kirkland points to the Agent Agreement and July 9 Email as evidence that Mosaic ordered off-duty HSCO deputies to keep the public away from the Mosaic properties, including public roadways. W. Kirkland also points to deposition testimony that Mosaic hired off-duty HSCO deputies to patrol the areas surrounding Mosaic's property as well as Mosaic's property itself in support of his argument that HSCO were ordered to keep the public away from Mosaic's properties. W. Kirkland argues that the "pro-arrest" policy mentioned in the July 9 Email resulted in W. Kirkland's unlawful arrest.[8] W. Kirkland also asserts that he has established joint action

---

[8] W. Kirkland's response in opposition to Mosaic's motion for summary judgment contains arguments regarding claims that were dismissed in the Court's April 29, 2015 Order (Dkt. 71). As W. Kirkland's claims in Counts II and III have been dismissed along with S. Kirkland's claims, arguments regarding such claims are moot.

between Mosaic and HCSO because "Mosaic and its agent, McGuckin, admit[ed] that they did not want the public in this area that was subject to the TRO." (Dkt. 103 at 12-13).

"A defendant cannot be held liable under section 1983 on a *respondeat superior* or vicarious liability basis." *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992) (citation omitted). This rule applies to both municipal and private corporations. *Id*. "Therefore, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*." *Jones v. Eckloff*, No. 2:12-CV-375-FTM-29, 2014 WL 272666, at *6 (M.D. Fla. Jan. 23, 2014) (citations omitted). However, a corporation may be held liable for the unconstitutional acts of employees where there is a policy, custom, or action by those who represent official policy that causes the injury. *Edwards v. Acadia Realty Trust, Inc.*, 141 F. Supp. 2d 1340, 1347-48 (M.D. Fla. 2001) *aff'd sub nom. Edwards v. Acadia Realty Trust*, 31 F. App'x 936 (11th Cir. 2002) (citations omitted).

In order to show an official policy or custom in a § 1983 action, a plaintiff must show: "(1) an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority." *Rodriguez v. City of Clermont*, 681 F. Supp. 2d 1313, 1329 (M.D. Fla. 2009). Such policy or custom must involve unconstitutional conduct. *Id*. at 1330. The plaintiff must also demonstrate that the entity was the "moving force" behind the injury, demonstrating both culpability and causation through the entity's policies. *See Rey*, 1998 WL 656070, at *4 (citing *Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 117 S. Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)).

In the instant case, W. Kirkland has not provided sufficient evidence to establish that Mosaic had an official policy that involved unconstitutional conduct. Neither the Agent Agreement

nor the July 9 Email relied on by W. Kirkland show that Mosaic had a policy related to unlawful arrest. The Agent Agreement provides the Sheriff of Hardee County and his deputies "free access to each of [Mosaic's] properties in order to seek out and arrest those who may be trespassing thereon, or otherwise engaged in illegal activities." (Dkt. 103-2). The July 9 Email expressly limited Mosaic's "pro-arrest stance" to "trespassing and other threshold crimes." (Dkt. 103-8 at 2). As such, the Agent Agreement and the July 9 Email only discuss arresting those who are trespassing or participating in other crimes; they do not provide factual support to W. Kirkland's contention that Mosaic had a policy that promoted unlawful arrest. The Supreme Court has instructed that courts must carefully scrutinize the link between the allegedly improper conduct and the constitutional violation at issue. *See Board of the County Commissioners v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding that a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights"). Here, W. Kirkland was arrested on public property for disorderly conduct. W. Kirkland has not provided evidence showing that his arrest was directly caused by Mosaic's policy regarding arresting trespassers or those committing crimes on Mosaic property as reflected by the Agent Agreement and the July 9 Email.

Additionally, W. Kirkland has not provided sufficient evidence to show that McGuckin was an authorized policy-maker of the municipality or the corporate entity. *See Rey v. KMART Corp.*, No. 97-3912-CIV-GOLD, 1998 WL 656070, at *5 (S.D. Fla. July 21, 1998). "The determination of whether the individual decision-maker is a final, authorized policy-maker is a question of law for the Court to decide." *Id.* In the instant case, W. Kirkland has not pointed to any evidence showing that McGuckin had final, decision-making authority for Mosaic. Therefore, W.

Kirkland cannot establish that Mosaic is vicariously liable for the actions of McGuckin under § 1983.

Finally, W. Kirkland cannot show that Mosaic is a state actor through the nexus/joint action test. To prevail in a § 1983 suit, a plaintiff must show that the defendant is a state actor. *Higdon v. Smith*, 565 F. App'x 791, 792 (11th Cir. 2014). To establish state action under § 1983, "[a] governmental body and private party must be intertwined in a symbiotic relationship [that] involve[s] the specific conduct of which the plaintiff complains." *Focus on the Family,* 344 F.3d at 1278 (internal quotation marks omitted); *see also Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1316 (11th Cir. 2000) ("to sustain a § 1983 claim under the nexus/joint action test, the symbiotic relationship between the public and private entities must involve the alleged constitutional violation.") Private parties are only rarely deemed to be state actors under § 1983. *Brivik v. Law*, 545 F. App'x 804, 808 (11th Cir. 2013). The Eleventh Circuit has held that conduct is fairly attributable to the state only when the state has had some affirmative role in the particular conduct underlying a plaintiff's claim. *Higdon*, 565 F. App'x at 793.

Here, because W. Kirkland has failed to establish that McGuckin's actions were driven by an unconstitutional policy of Mosaic or that McGuckin was a decision-maker for Mosaic, W. Kirkland cannot show joint action between the state and Mosaic. Accordingly, Mosaic is entitled to summary judgment as to W. Kirkland's unlawful arrest claim.

**IV. SHERIFF LANIER'S MOTION FOR SUMMARY JUDGMENT**

Sheriff Lanier argues that he is entitled to summary judgment on W. Kirkland's unlawful arrest claim because W. Kirkland cannot show that Sheriff Lanier or the HSCO had a policy or custom that was the moving force behind the alleged constitutional violation. Sheriff Lanier also

8

argues that W. Kirkland has not presented any evidence that Sheriff Lanier "ratified" McGuckin's arrest of W. Kirkland or that a failure to train caused the alleged constitutional violation.

W. Kirkland responds that the Agent Agreement and the July 9 Email shows that Sheriff Sheriff Lanier adopted a plan promulgated by Mosaic. W. Kirkland argues that the "pro-arrest" policy mentioned in the July 9 Email resulted in the violation of W. Kirkland's constitutional rights.

It is well established that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003) *vacated on other grounds,* 449 F.3d 1149 (11th Cir. 2006); *see also Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 694 n. 58 (1978). Instead, under § 1983, supervisory liability occurs only when the supervisor personally participates in the alleged misconduct or when there is a causal connection between the supervising official's actions and the alleged constitutional deprivation. *Cottone,* 326 F.3d at 1360. A causal connection can be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (internal citation and quotation omitted).

For liability purposes, "a suit against a public official in his official capacity is considered a suit against the local government entity he represents." *See Owens v. Fulton County,* 877 F.2d 947, 951 n. 5 (11th Cir.1989). A local government is, however, liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell,* 436 U.S. at 694 (holding that liability of municipalities and other governmental entities under § 1983 is

9

limited to instances of official policy or custom). To attribute liability to a public official in his official capacity under § 1983, Plaintiffs must demonstrate that the public official had an official policy or custom that was "the moving force of the constitutional violation." *Vineyard v. County of Murray, Ga.,* 990 F.2d 1207, 1211 (11th Cir.1993) (quoting *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S. Ct. 445, 70 L.Ed.2d 509 (1981)).

Here, Sheriff Lanier did not participate in the arrest of W. Kirkland. As a result, W. Kirkland must establish a causal connection between Sheriff Lanier's official policy or custom and W. Kirkland's allegedly unlawful arrest. W. Kirkland has failed to show that Sheriff Lanier or HSCO had any policy or custom that caused the alleged constitutional violation. W. Kirkland again relies on the Agent Agreement and July 9 Email to show that Sheriff Lanier adopted a policy or custom that caused a violation of W. Kirkland's constitutional rights. However, as discussed above, the Agent Agreement and July 9 Email do not involve or promote unlawful arrest. Instead, the Agent Agreement and July 9 Email merely discuss arresting those who are trespassing, participating in other crimes, or are engaged in illegal activities on Mosaic's property. Furthermore, W. Kirkland has not alleged that Sheriff Lanier or HSCO had a widespread policy of constitutional violations that constituted a custom with the force of law. Thus, W. Kirkland has not established the required causal connection between actions of Sheriff Lanier and the alleged constitutional violation. Accordingly, Sheriff Lanier is entitled to summary judgment on W. Kirkland's unlawful arrest claim.

**V.    CONCLUSION**

On the basis of the forgoing, it is **ORDERED AND ADJUDGED** that:

1. Defendant Mosaic Fertilizer, LLC's Motion for Final Summary Judgment (Dkt. 100) is **GRANTED**;

10

2. Defendant Sheriff's Motion for Summary Judgment (Dkt. 101) is **GRANTED**; and

3. Defendants Lake and Wright's Motion for Summary Judgment (Dkt. 102) is **DENIED** as **MOOT**.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of December, 2015.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record and Parties